UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
**VINCENT CATALANO,**

                Plaintiff,

         **- against -**

**COMMISSIONER OF SOCIAL SECURITY**

                Defendant.

--------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

21-CV-1442 (AMD)

**ANN M. DONNELLY**, United States District Judge:

The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). (ECF No. 11-1 at 5.) Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 11, 17.) For the reasons set forth below, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

### I. Procedural History

On October 17, 2018 the 58-year-old plaintiff filed for disability insurance benefits alleging disability beginning on January 1, 2017. (Tr. 274.) The plaintiff listed the following conditions in his application: "myocardial infarction, left carpal tunnel syndrome, insulin dependent diabetes with neuropathies, dizziness, impaired mentation, and numbness of the face and extremities." (Tr. 103.) The Social Security Administration ("SSA") denied the plaintiff's

claim on March 21, 2019, (Tr. 142-154), and again upon reconsideration on May 9, 2019.[1] (Tr. 155-66.)

On July 19, 2019, the plaintiff requested a hearing before an Administrative Law Judge. (Tr. 167-68.) On August 25, 2020, Administrative Law Judge David J. Begley (the "ALJ") held a telephonic hearing, at which the plaintiff, represented by Harold Shovronsky and Charles Weiser, and vocational expert ("VE") Chanda Griffin testified. (Tr. 68-97, 140-41.) After considering the record, the ALJ denied the plaintiff's claim. (Tr. 21-24.)

On September 22, 2020, the plaintiff filed a request for review with the Appeals Council, which the Appeals Council denied on January 27, 2021. (Tr. 267-69, 1-7.) On March 18, 2021, the plaintiff commenced this action and moved for judgment on the pleadings on November 11, 2021. (ECF Nos. 1,11.) On March 15, 2022, the defendant filed a cross-motion for judgment on the pleadings. (ECF No. 17.)

## II. The Plaintiff's Medical Record

### a. Treating Sources

On February 2, 2017, the plaintiff was admitted to Coney Island Hospital with chest pains, likely from a heart attack. (Tr. 468.) The next day, he was transferred to Maimonides Hospital, where Dr. Elliot J. Borgen, an interventional cardiologist, inserted a stent to resolve a

---

[1] The administrative record contains two Disability Determination Explanations at the initial level— Exhibits 1A and 2A. The first pages of both explanations state "The DDS proposes a fully favorable allowance, but the claimant's work history needs clarification." (Tr. 98, 112.) QQR Reviewer Thomas Broderick signed the first explanation on March 9, 2019. (Tr. 111.) Disability Adjudicator/Examiner C. Petition signed the second one on March 20, 2019. (Tr. 125.) The records are identical, with one notable exception; the March 9, 2019 evaluation states that the plaintiff is "Disabled" based on the documented findings, (Tr. 110), while the March 20, 2019 evaluation states that the plaintiff is "Not Disabled." (Tr. 124.) There is no explanation for this discrepancy in the record, the ALJ did not explain it, and the parties do not discuss it.

blockage in the plaintiff's left descending coronary artery. (Tr. 401, 468.) The plaintiff tolerated the procedure well. (Tr. 399.)

After his heart attack, the plaintiff experienced constant numbness in his face, a loss of balance, increased tripping, and an inability to concentrate. (Tr. 597.)[2] On May 10, 2018, an endocrinologist, probably Dr. Iraklii Buziashvili, referred the plaintiff to Dr. Rafael Yakutilov, a neurologist. (*Id.*)

Five days later, on May 15, 2018, Dr. Yakutilov did an electrodiagnostic evaluation which revealed "evidence of a moderate bilateral sensorimotor demyelinating and axonal median nerve neuropathy at the wrist," findings that were "consistent with the clinical diagnosis of Carpal Tunnel Syndrome and evidence of moderate to severe sensorimotor axonal and demyelinating peripheral neuropathy affecting bilateral upper and lower extremities." (Tr. 583.) On May 19, 2018, the plaintiff had an MRI. (Tr. 575.) Dr. Darren Bruno, who interpreted the results, observed evidence of a stroke and a chronic reduction in blood flow to the brain. (Tr. 575-76.) At a May 29, 2018 appointment Dr. Yakutilov diagnosed a stroke and unsteady gait. (Tr. 593-95.)

b.      **Consultative Examiners**

On January 2, 2019, consultative examiner Dr. Steven Samuels, an internist, examined the plaintiff. (Tr. 417.) He noted the plaintiff's 2017 heart attack and angioplasty, as well as a 2002 kidney removal because of cancer and a 1989 surgery for a perforated colon; these operations were successful. (Tr. 417-18, 574.)

---

[2] The plaintiff saw Dr. Yakutilov on May 3, 2009, for numbness in his legs, toes and feet, and pain in his Achilles tendon and right middle toes. (Tr. 596.)

3

Dr. Samuels reported that the plaintiff had diabetes, high blood pressure, arthritis, high cholesterol, carpal tunnel syndrome, and a torn left rotator cuff that caused mild stiffness and aching. (Tr. 418.) The plaintiff did not have surgery for either orthopedic condition. (Tr. 418.)

The plaintiff told Dr. Samuels that he could shower, get dressed, cook and provide some childcare, but that he did not clean or do laundry and had difficulty climbing stairs and walking long distances. (Tr. 419.) Dr. Samuels saw that the plaintiff's gait was myopathic,[3] but that he could walk on his heels and toes without difficulty, partially squat, and get onto the exam table without assistance. (Tr. 419.) According to Dr. Samuels, the plaintiff "appeared to be in no acute distress." (Tr. 419.)

Dr. Samuels did a comprehensive musculoskeletal exam and concluded that the plaintiff had decreased ranges of motion in his shoulders, wrists, hips and knees. (Tr. 420.) The plaintiff had a much lower range of motion in his left shoulder than in his right. (Tr. 420.) Dr. Samuels concluded that the plaintiff still had full strength in his hands, arms and legs, but a decreased ability to detect pinpricks and tactile stimulation in his feet and lower legs. (Tr. 420.)

In his medical source statement, Dr. Samuels wrote that the plaintiff "has a marked limitation [] reaching overhead using left upper extremity, arm, and shoulder; prolonged walking, prolonged standing, climbing, walking up and down stairs, squatting, lifting and carrying heavy objects, and strenuous physical activity. Limitations as per cardiology." (Tr. 421.)

On January 22, 2019, consultative psychologist Dr. Toula Georgiou examined the plaintiff. (Tr. 423.) The plaintiff told Dr. Georgiou that he had impaired short-term memory and

---

[3] The myopathic or "waddling" gait occurs "when there is weakness of the hip girdle muscles, most often due to myopathy and most characteristically due to muscular dystrophy." WILLIAM W. CAMPBELL and RICHARD J. BARON, DEJONG'S THE NEUROLOGICAL EXAMINATION 648 (8th ed. 2019).

4

struggled to follow conversations with multiple people. (Tr. 423.) Dr. Georgiou concluded that the plaintiff was "coherent and goal oriented" and that his cognitive functioning was average. (Tr. 423.) She also administered simple recall tests, which showed that the plaintiff's recent and remote memory skills were "mildly impaired." (Tr. 424.) Dr. Georgiou ruled out a neurocognitive disorder but found that the petitioner "may have difficulties with some complex tasks." (Tr. 424.) She also observed that the petitioner "may benefit from further evaluation of his cognitive facilities." (Tr. 425.)

      c.      "Non-Examining" Experts

At the initial disability determination stage, five "non-examining" experts reviewed and evaluated the plaintiff's medical records.

On January 14, 2019, Dr. H. Khurana, an internist, described the available medical evidence as "very limited, consisting only of notes related to admission in 2/17, and CE dated 1/2/19." (Tr. 103.) Dr. Khurana added that the Coney Island Hospital and Dr. Arthur Marush were also treating sources, "from whom ME should be obtained prior to final rating." (Tr. 103.)[4]

On January 26, 2019, Dr. L. Marasigan, an internist, assessed the plaintiff's physical residual functional capacity ("RFC"). (Tr. 107.) Dr. Marasigan concluded the plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, that he could stand or walk for four hours, and sit for six hours during an eight-hour workday. (Tr. 107.) In addition, Dr. Marasigan found that the plaintiff could climb ramps and stairs, balance, stoop, kneel, crouch and crawl occasionally, but could never climb ladders, ropes or scaffolds. (Tr. 107). The plaintiff could push and pull, subject to limitations for lifting and carrying. The plaintiff had postural

---

[4] The plaintiff's attorneys could not get relevant records from two of the plaintiff's treating physicians, Drs. Arthur Marush and Iraklii Buziashvili. (Tr. 376.)

limitations because of "diminished sensation" in his lower extremities, and "no foot control." (Tr. 108.)  The plaintiff had no manipulative, visual, communicative or environmental limitations.  (Tr. 108.)

On January 30, 2019, Dr. E. Gagan, a psychiatrist, evaluated the plaintiff's medically determinable impairments, and concluded the plaintiff's ischemic heart disease and diabetes mellitus were severe impairments, but that his neurological disorders were "non-severe" from a "psych viewpoint."  (Tr. 105-06.)

On February 26, 2019, Dr. Robert Campion, a psychiatrist, noted that the "the sole source of psych evidence" was Dr. Georgiou's consultative exam on January 22, 2019.  (Tr. 104.)  Dr. Campion agreed with Dr. Georgiou that the plaintiff's mental condition was "non-severe" and that the medical evidence supported that rating.  (Tr. 104.)

Dr. Jose Rabelo, an internist, reviewed the plaintiff's records on February 26, 2019, considered that the plaintiff had a stent, diabetes, neuropathy, and a myopathic gait, and that the plaintiff had full strength in his upper and lower extremities.  (Tr. 104.)  Dr. Rabelo also agreed with Dr. Marasigan that the plaintiff could lift or carry 20 pounds occasionally and 10 pounds frequently, and could stand for four hours.  (Tr. 106.)

At the reconsideration of disability determination stage, two more non-examining experts reviewed the plaintiff's medical file.  Dr. V. Ng, a psychologist, reviewed all evidence in the plaintiff's file and affirmed Dr. Gagan's January 30, 2019 assessment that the plaintiff's heart disease and diabetes were severe, but that his neurological disorders were not.  (Tr. 133.)  Dr. R. Dickerson, an internist, also reviewed the plaintiff's medical file and affirmed Dr. Rabelo's February 26th decision, noting "there is no new evidence to consider."  (Tr. 135.)

### III.     The ALJ's Decision

In a September 9, 2020 decision, the ALJ denied the plaintiff's claim for benefits. (Tr. 25.) The ALJ found that the plaintiff had insured status under Title II of the Act through December 31, 2021 and had not engaged in substantial gainful activity since January 1, 2017, the alleged date of disability onset. (Tr. 18-19.) The ALJ determined that the plaintiff had the following severe impairments: "diabetes mellitus with neuropathy, left carpal tunnel syndrome, and status-post non-ST elevation myocardial infarction status post stent placement." (Tr. 19.) However, the ALJ found that the plaintiff did not have a medically determinable mental impairment. (Tr. 19.) At step three, the ALJ found that the plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. (Tr. 19-20.) Before moving to the fourth step, the ALJ determined the plaintiff's RFC. (Tr. 20-23.) The ALJ concluded that the plaintiff could perform light work, except that he "would be prohibited from climbing ladders, ropes, or scaffoldings; further limited to only occasional climbing of ramps or stairs; occasional balancing, stooping, kneeling, crouching, or crawling; would be limited to frequent handling and fingering bilaterally; and would need to avoid concentrated exposure to hazardous machinery, unprotected heights, and open flames." (Tr. 20.) At step four, the ALJ adopted the VE's testimony that the plaintiff could perform his past relevant work as a labor union business representative. (Tr. 23-24.) Accordingly, the ALJ concluded that the plaintiff was "not disabled" from January 1, 2017, the alleged date of disability onset, through September 9, 2020, the date of the decision. (Tr. 23-24.)

## STANDARD OF REVIEW

A court reviewing a Commissioner's final decision must "determin[e] whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v.*

7

*Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  Substantial evidence is "more than a mere scintilla," and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If substantial evidence exists to support the Commissioner's factual findings, those findings must be sustained.  42 U.S.C. § 405(g).  A district court judge cannot substitute her own judgment for that of the Commissioner "even if [she] might justifiably have reached a different result upon *de novo* review."  *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Although the Commissioner's factual determinations are binding when they are supported by substantial evidence, a court will not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case."  *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (alteration in original) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)).  Thus, "legal error alone can be enough to overturn the ALJ's decision."  *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

"Remand is warranted where 'there are gaps in the administrative record or the ALJ has applied an improper legal standard.'"  *Antonetti v. Comm'r of Soc. Sec. Admin.,* No. 19-CV-1396, 2020 WL 3893010, at *4 (E.D.N.Y. July 11, 2020) (quoting *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999)).  "Remand is particularly appropriate where further findings or explanation will clarify the rationale for the ALJ's decision."  *Id*. (citing *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996)).

The court must be "satisfied that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the [Social Security] Act."  *Moran*

*v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). A district court should remand if "the Commissioner has failed to provide a full and fair hearing, to make explicit findings, or to have correctly applied the . . . regulations." *Manago v. Barnhart*, 321 F. Supp. 2d 559, 568 (E.D.N.Y. 2004). "An ALJ does not have to state on the record every reason justifying a decision." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012). But "when the ALJ's rationale is unclear in light of the record evidence, remand to the Commissioner . . . for an explanation of the ALJ's reasoning is warranted." *Gonzales v. Comm'r of Soc. Sec.*, No. 16-CV-8445, 2017 WL 7310391, at *8 (S.D.N.Y. Dec. 21, 2017) (internal citation omitted).

## DISCUSSION

The plaintiff argues that remand is necessary because the ALJ did not fully satisfy his duty to develop the record, and because the ALJ's RFC decision was not supported by substantial evidence. (ECF No. 7, 12-13). For the reasons explained below, I agree with the plaintiff.

### I. The ALJ's Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). Accordingly, an ALJ must "affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Moran*, 569 F.3d at 112 (citation omitted). "The ALJ's failure to develop the record is a threshold issue, because the Court cannot rule on whether the ALJ's decision regarding [the plaintiff's] functional capacity was supported by substantial evidence if the determination was based on an incomplete record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 267 (S.D.N.Y. 2016) (internal quotation marks omitted). "While there is no affirmative duty to resolve all inconsistencies in the record, the ALJ has a duty to develop the record if there exists 'obvious gaps.'" *Lebby v. Comm'r of*

9

*Soc. Sec.*, No. 20-CV-4760, 2022 WL 580983, at *4 (E.D.N.Y. Feb. 24, 2022) (quoting *Rusin v. Berryhill*, 726 F. App'x 837, 840-41 (2d Cir. 2018)).

"[T]he ALJ must seek additional evidence or clarification when a report from a medical source contains a conflict or ambiguity, lacks necessary information, or is not based on medically acceptable clinical and laboratory diagnostic techniques." *Colucci v. Acting Comm'r of Soc. Sec.*, No. 19-CV-1412, 2021 WL 1209713, at *5 (E.D.N.Y. Mar. 31, 2021) (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). "In assembling a complete record, the SSA must 'make every reasonable effort' to 'get medical reports from [plaintiff's] medical sources.'" *Id.* (quoting 20 C.F.R. §§ 404.1512(d), 416.912(d)). "'Every reasonable effort' means making 'an initial request for evidence from [plaintiff's] medical source[s],' and, if no response has been received, 'one follow-up request.'" *Id.* (quoting 20 C.F.R. §§ 404.1512(d)(1), 416.912(d)(1)).

Remand is appropriate in this case because there are gaps in the record, and additional information is necessary to complete it. This is particularly true on the issue of the plaintiff's psychiatric and mental impairments. "Courts hold that where, as here, psychiatric impairments are at issue, an ALJ has a heightened duty to develop the record due to the difficulties associated with evaluating a mental illness' impact on a claimant's ability to function adequately in a workplace." *Munnings-Bah v. Saul*, No. 19-CV-3510, 2020 WL 5755065, at *12 (S.D.N.Y. Sept. 14, 2020) (collecting cases), *report and recommendation adopted sub nom.*, 2020 WL 5880182 (S.D.N.Y. Oct. 2, 2020).

Only one mental health professional—Dr. Georgiou—examined the plaintiff, and she was a consultative examiner, not the plaintiff's treating physician. The Second Circuit has "cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination. This concern is even more pronounced in the context of mental illness where, as

10

discussed above, a one-time snapshot of a claimant's status may not be indicative of her longitudinal mental health." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (internal citations omitted); *Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("ALJs should not rely heavily on the findings of consultative physicians after a single examination.")

Moreover, the consultative doctor's opinions demonstrate that the further development of the record is necessary. Dr. Georgiou recommended that the petitioner "may benefit from further evaluation of his cognitive facilities." (Tr. 425.) Similarly, Dr. Khurana, the non-examining expert who reviewed the plaintiff's file noted that the available medical evidence "was very limited" and recommended that the plaintiff's primary care physician, Dr. Arthur Marush, provide information before the final disability determination was made. (Tr. 103.)

The record is also deficient because there are no medical opinions or functional assessments from any of the plaintiff's treating physicians. *Manago v. Kijakazi*, No. 20-CV-1251, 2021 WL 4408966, at *8 (E.D.N.Y. Sept. 26, 2021) ("The ALJ failed to develop the record because the ALJ did not seek functional assessments from Plaintiff's treating physicians when the record consisted of only medical notes and records. The ALJ's decision demonstrates that the ALJ drew conclusions from Plaintiff's medical records as opposed to functional assessments from Plaintiff's treating physicians."). The "assessments" from Dr. Yakutilov, the only treating physician in the record, are "not medical opinions for the purposes of the RFC determination" because they do not speak to the plaintiff's "ability to perform the physical demands of work activities or his ability to adopt to the work environment." *Commisso v. Comm'r of Soc. Sec.*, No. 20-CV-4872, 2022 WL 742871, at *6 (E.D.N.Y., Mar. 11, 2022) ("Although the ALJ received Plaintiff's medical records, including progress notes from [the

11

plaintiff's treating physicians], none of the records included a medical opinion about Plaintiff's abilities or physical limitations.").

The record does not establish that the ALJ sought additional mental or physical RFC evidence, including from Dr. Marush. The plaintiff's attorneys tried to reach Dr. Marush, but it does not appear that the ALJ tried to contact the doctor. "[W]hile an ALJ may rely on the claimant's counsel in the first instance to obtain missing treating records, she must nevertheless take 'independent steps to complete the record' if necessary. Thus, courts in our Circuit have frequently found that an ALJ does not satisfy her duty to develop the record by relying on the claimant's attorney to obtain the missing records." *Dillon v. Comm'r of Soc. Sec.*, No. 17-CV-4136, 2018 U.S. Dist. LEXIS 154897, at *49-50 (S.D.N.Y. Sept. 7, 2018) (internal citations omitted); *Newsome v. Astrue*, 817 F. Supp. 2d 111, 137 (E.D.N.Y. 2011) ("The fact that the ALJ requested additional information from the Plaintiff's attorney and did not receive that information does not relieve the ALJ of his duty to fully develop the record."); *Glast v. Astrue*, 2013 WL 5532696, at *10 (E.D.N.Y. Sept. 30, 2013) (ALJ did not satisfy his duty to develop the record where he asked counsel to obtain additional evidence and left the record open for that purpose for two weeks.)

"Failing to adequately develop the record is an independent ground for vacating the ALJ's decision and remanding for further findings." *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 442 (E.D.N.Y. 2016); *see also Rosa*, 168 F.3d at 83 (finding remand "particularly appropriate" where the ALJ did not obtain adequate information from treating physicians and potentially relevant information from other doctors). On remand, the ALJ should contact the plaintiff's treating doctors, and gather all evidence necessary to complete the record, and then evaluate the plaintiff's RFC.

12

**II.     The ALJ's Assessment of the Medical Opinions**

The treating physician rule does not apply because the plaintiff filed his claim after March 27, 2017; instead 20 C.F.R. § 404.1520c governs this case.  Pursuant to that rule, the ALJ considers five factors in deciding whether a medical opinion is persuasive: (1) supportability; (2) consistency; (3) the source's relationship with the patient; (4) the source's specialty; and (5) "other factors that tend to support or contradict" the opinion.  20 C.F.R. §§ 404.1520c(c)(1)-(c)(5).  After considering these factors, the ALJ must articulate "how persuasive she find[s] all of the medical opinions and all of the prior administrative medical findings in [the plaintiff's] case record."  *Id*. § 404.1520c(b).

The most important factors are supportability and consistency.  *Id*. § 404.1520c(b)(2).  While the ALJ is not required to explain his consideration of all five factors, he must discuss these two.  *Id*.  On the issue of supportability, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id*. § 404.1520c(c)(1).  As for consistency, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."  *Id*. § 404.1520c(c)(2).

"Even though ALJs are no longer directed to afford controlling weight to treating source opinions," the regulations "still recognize the foundational nature of the observations of treating sources."  *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020) (quoting *Shawn H. v. Comm'r of Soc. Sec.*, No. 19-CV-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)).  Because a treating source examines a claimant directly, they "may

13

have a better understanding of [a claimant's] impairment(s) . . . than if the medical source only reviews evidence in [a claimant's] folder." *Soto*, 2020 WL 5820566, at *4 (quoting 20 C.F.R. § 404.1520c(c)(3)(v)).

> **a.** **The ALJ erred in his description of the record.**

Remand in this case is appropriate because the ALJ overlooked evidence of the plaintiff's disability and misconstrued the record before him. *Hilton v. Kijakazi*, No. 20-CV-9318, 2022 WL 1451476, at *2 (S.D.N.Y. May 9, 2022) ("[T]he ALJ may not ignore or mischaracterize evidence of a person's alleged disability.") (citing *Ericksson v. Commissioner of Social Security*, 557 F.3d 79, 82-84 (2d Cir. 2009)). In rejecting Dr. Samuels's opinion that the plaintiff had marked limitations for reaching overhead and prolonged walking and standing, the ALJ concluded that the doctor's opinion was based entirely on the plaintiff's heart condition. (Tr. 23.) Thus, the ALJ wrote that Dr. Samuels "does not properly describe how a heart condition would cause difficulty reaching overhead using the left upper extremity." (Tr. 23.) In fact, Dr. Samuels examined the plaintiff thoroughly, and observed that his range of motion in his left shoulder was significantly diminished, that his gait was "myopathic," and that he had decreased sensation in his legs. (Tr. 420.)

The ALJ also discounted the opinions of two other non-examining experts, Drs. Marasigan and Dickerson. Both opined that the plaintiff could stand or walk only for a total of four hours, but according to the ALJ, neither doctor cited medical evidence to support their opinions, and their opinions were either inconsistent or unsupported by the medical evidence each doctor reviewed. (Tr. 22) Here, the ALJ once again misconstrued the record, which included medical evidence, cited by both doctors, of the plaintiff's diminished foot control and sensation in his lower extremities. (Tr. 122, 135.)

### b. The ALJ overlooked evidence.[5]

"Federal courts reviewing administrative social security decisions decry 'cherry picking' of relevan[t] evidence, which may be defined as inappropriately crediting evidence that supports administrative conclusions while disregarding differing evidence from the same source." *Artinian v. Berryhill*, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018); *Jones v. Saul*, No. 19-CV-5542, 2020 WL 5775525, at *12 (S.D.N.Y. Sept. 11, 2020), *report and recommendation adopted*, 2020 WL 5775195 (Sept. 28, 2020) ("[An] ALJ may not 'cherry-pick' medical opinions, or selectively cite treating notes or diagnostic imaging that support the ALJ's own view while ignoring opinions and evidence that do not.")

The ALJ concluded that there was no evidence that the plaintiff had a "marked limitation in physical functioning," because "the record repeatedly describes him [as walking] with a normal gait" (Tr. 20); the ALJ cited treating physician Dr. Yakutilov's finding that the plaintiff "could ambulate independently," but nothing in the record says that the plaintiff's gait was "normal." (Tr. 590.) Indeed, Dr. Yakutilov described the plaintiff's gait as "unsteady." (Tr. 597.) The ALJ did not reconcile this contradiction, or make any findings about whether Dr. Yakutilov's medical opinions were persuasive, which he was required to do under 20 C.F.R. § 404.1520c(b), especially given the "foundational nature of the observations of treating sources." *Soto v. Comm'r of Soc. Sec.*, No. 19-CV-4631, 2020 WL 5820566, at *4 (E.D.N.Y. Sept. 30, 2020.)

In addition, the ALJ adopted Dr. Samuels's finding that the plaintiff had full musculoskeletal strength, and could walk without assistance, but overlooked Dr. Samuels's

---

[5] To the extent the record contained inconsistencies or ambiguities, the ALJ's duty to develop the record included "a duty to resolve apparent ambiguities relevant to the ALJ's disability determination. *Doria v. Colvin*, No. 14-CV-7476, 2015 WL 5567047, at *7 (S.D.N.Y. Sept. 22, 2015) (citation omitted).

15

observations of the neurological damage in the plaintiff's legs and feet, the plaintiff's "myopathic gait," and his marked limitations for prolonged standing and walking. (Tr. 23, 419-421.)  To the extent that the ALJ believed Dr. Samuels's opinion was "insufficiently explained, lacking in support, or inconsistent," he should have sought "clarification and additional information from [Dr. Samuels], as needed, to fill any clear gaps before rejecting the doctor's opinion."  *Correale-Englehart v. Astrue*, 687 F. Supp. 2d 396, 428 (S.D.N.Y. 2010).  On remand, the ALJ should re-evaluate the entire record, and seek clarification or additional evidence, if necessary.

### c. The ALJ's RFC determination was not supported by a medical opinion.

On remand, I direct the ALJ to revisit his determination that the plaintiff's RFC was not supported by a medical opinion in the record.  "To be supported by substantial evidence, the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence."  *Collins v. Comm'r of Soc. Sec.*, No. 20-CV-4693, 2021 WL 3054964, at *4 (E.D.N.Y. July 20, 2021) (internal quotation marks and citations omitted.)  The ALJ determined that the plaintiff had the RFC to perform light work as defined in 20 CFR § 404.1567(b), subject to the postural limitations described by Drs. Marasigan and Dickerson.  (Tr. 20.)  Pursuant to 20 CFR § 404.1567(b), "to be considered capable of performing a full or wide range of light work" the plaintiff must have the ability to do "a good deal of walking or standing[.]"

The doctors who offered an opinion on the plaintiff's ability to stand and walk concluded his capacity for these activities was limited.  Non-examining experts Drs. Marasigan and Dickerson opined that the plaintiff could stand or walk only for four hours.  (Tr. 122, 135.) Consultative examiner Dr. Samuels said that the plaintiff had "a marked limitation to …

16

prolonged walking, prolonged standing." As discussed above, the ALJ overlooked or misconstrued these opinions.

Moreover, none of the medical opinions support the ALJ's RFC determination. *Arias v. Saul*, No. 18-CV-1296, 2020 WL 1989277, at *7 (E.D.N.Y. Apr. 25, 2020) (ALJ RFC determination "could not stand if unsupported by at least one medical opinion"). The ALJ cited portions of the opinions, for example Dr. Samuels's finding that the plaintiff had full musculoskeletal strength, and that he could walk without an assistive device. (Tr. 23.) But the ALJ did not also consider the conclusions that Dr. Samuels drew from these observations, including that the plaintiff had marked physical limitations. For this reason, it appears that the ALJ "arbitrarily substitute[d] his own judgment for competent medical opinion." *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *Filocomo v. Chater*, 944 F. Supp. 165, 170 (E.D.N.Y. 1996) ("In the absence of supporting expert medical opinion, the ALJ should not have engaged in [his] own evaluations of the medical findings.").

The defendant concedes that "there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination" but, citing *Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-110 (2d Cir. 2020), argues that medical opinions are not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity." (ECF No. 17-1 at 18.) But in *Cook* there was no medical evidence that refuted the ALJF's RFC determination. *See id.* at 110. In this case, there was contrary medical evidence that the ALJ did not consider in reaching his decision.

On remand, the ALJ should try to get the plaintiff's records from the doctors who treated him, including Dr. Marush, the plaintiff's primary care physician, and Dr. Buziashvili, the plaintiff's endocrinologist. The ALJ should also seek medical source statements from these

17

doctors about the plaintiff's RFC. Finally, the ALJ should also seek additional information or clarification to resolve any ambiguities or inconsistencies. Once the record is complete, the ALJ should revaluate the plaintiff's mental and physical RFC.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied. The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

                                                          s/Ann M. Donnelly
                                                 _____
                                                 ANN M. DONNELLY
                                                 United States District Judge

Dated: Brooklyn, New York
        September 28, 2022